USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMAL HAMMOUD,

                Plaintiff,

-against-

SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN,

                Defendant.

1:20-cv-106 (MKV)

OPINION & ORDER
GRANTING
MOTION TO DISMISS
WITHOUT PREJUDICE

MARY KAY VYSKOCIL, United States District Judge:

    Plaintiff Jamal Hammoud brings this case against Defendant Société Générale de Banque au Liban, which is a Lebanese bank, asserting claims under New York law for breach of contract, conversion, and unjust enrichment. Plaintiff alleges that Defendant improperly withheld funds in violation of account holder agreements with non-party Milestones Capital ME, S.A.L., which is a Lebanese company. Defendant moves to dismiss the complaint [ECF #16]. For the reasons set forth below, Defendant's motion is GRANTED, and Plaintiff's complaint is dismissed without prejudice and with leave to amend.

## I.     BACKGROUND[1]

    Plaintiff Jamal Hammoud initiated this action by filing a complaint in the Supreme Court of New York [ECF #2-1 at 4–9 ("Cmpl.")]. Defendant Société Générale de Banque au Liban ("SGBL") removed the case to this Court [ECF #2 ("Notice of Removal")]. The Complaint asserts claims under New York law for breach of contract, conversion, and unjust enrichment.

---

[1] The facts are taken from the Complaint [ECF #2-1 at 4–9 ("Cmpl.")]. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true."). The Court also relies on a January 2011 application to open a bank account for "Milestones Capital . . . S.A.L." with Defendant that is referenced in the Complaint [ECF #18-2 ("Account Opening Application")]. *See* Cmpl. ¶ 7; *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (a court may consider "documents incorporated into the complaint by reference").

Cmpl. ¶¶ 21–30.  Defendant filed a pre-answer motion to dismiss [ECF #16, 17 ("Def. Mem."), 18, 21].  Plaintiff opposes that motion and, in the event that it is granted, requests leave to amend the Complaint [ECF #19 ("Pl. Opp."), 20].

In its brief, Defendant asserts that Plaintiff is a "resident of the State of New York."  Def. Mem. at 2.  Plaintiff states that he is a "New York business person."  Pl. Opp. at 1.  However, as discussed below, neither the Complaint, nor the Notice of Removal alleges that Plaintiff personally resides in New York.  Rather, Plaintiff alleges only that he is "the majority owner and principal of Milestones Capital, LLC, an advisory firm located at 350 Park Avenue" in New York, as well as an "affiliate[d]" Lebanese company, "Milestones Capital ME S.A.L."  Cmpl. ¶ 3.  Defendant is a Lebanese bank, headquartered in Lebanon.  *Id.* ¶¶ 4, 5.

According to Plaintiff's own complaint, in January 2011, Plaintiff "opened the first of two (2) accounts at [the Lebanese bank,] SGBL in the name of [his Lebanese company,] Milestones Capital ME S.A.L."  *Id.* ¶ 7.  The January 2011 "Account Opening Application," submitted by Defendant, describes the Lebanese company as the "owner[] of [the] Account(s)" [ECF #18-2 ("Account Opening Application") at 5].  Plaintiff is a "signatory" on the accounts, who was "[a]uthorized" to conduct "all Banking Operations for the Company."  Cmpl. ¶ 7; Account Opening Application at 4.

Plaintiff alleges that, between January 2011 and November 2019, Plaintiff "made requests from his . . . office in New York City for wire transfers to be made to a specified account in the United States" and, "[i]n every instance," Defendant "immediately wired the funds in accordance with Plaintiff's requests."  Cmpl. ¶¶ 8, 9.  However, in November 2019, Defendant refused Plaintiff's repeated requests to wire substantially all of the contents of his Lebanese company's

accounts at the Lebanese bank, SGBL, to "a designated account at First Niagara Bank in New York State ('First Niagara Account')." Cmpl. ¶¶ 10–19.

Specifically, Plaintiff alleges that, first, on November 8, 2019, Plaintiff "made a request by email from his New York office that SGBL change €250,000 to U.S. Dollars and then transfer a total of $400,000" to the First Niagara Account. *Id*. ¶ 10. At the time, the Lebanese accounts "contained no less than $494,683.29; thus, there was ample monies in the accounts to fulfill the wire request." But "Defendant did not respond to [the November 8] email." *Id*. ¶ 13. Plaintiff then sent "another email on November 13, 2019." *Id.* A "representative of Defendant then contacted Plaintiff by phone, and informed Plaintiff that SGBL would not wire the funds as requested." *Id*. ¶ 14. On November 14, 2019, Plaintiff sent another email "updat[ing] his wire request" to a "total of approximately $457,224." *Id*. ¶ 16.

Plaintiff alleges that, at least during the November 13 phone call, Defendant did not any "specific reason" why it would not honor the wire requests. *Id*. ¶ 14. Defendant asks the Court to take judicial notice of a "banking crisis in Lebanon" and submits reports that Lebanese banks, purportedly in an agreement with Lebanon's Central Bank, imposed "restrictions on withdrawals and overseas transfers" [ECF #18-1, 18-4]. Def. Mem. at 1. The Court may take judicial notice of historical facts, including world financial events. *See*, *e.g.*, *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 314 F. Supp. 3d 497, 515 (S.D.N.Y. 2018), *aff'd*, 771 F. App'x 498 (2d Cir. 2019); *Starr Int'l Co. v. Fed. Reserve Bank of New York*, 906 F. Supp. 2d 202, 205 (S.D.N.Y. 2012), *aff'd*, 742 F.3d 37 (2d Cir. 2014); 29 Am. Jur. 2d Evidence § 66. However, the Court need not do so, at this stage, to resolve Defendant's present motion.

Plaintiff alleges that he sent "follow up email requests on November 19 and November 21" and that, in each of these emails, Plaintiff "informed SGBL that he needed the funds to

3

immediately satisfy payment obligations in the United States, which . . . were accruing additional penalties and interest by the day." *Id.* ¶¶ 17, 18. The Complaint does not specify whether these were personal obligations or debts owed by his companies. Plaintiff further alleges that, despite a threat of "legal action," through counsel, on November 26, 2019, the Lebanese bank "has continued to improperly withhold the requested wire funds in direct violation of Milestones' account holder agreements." *Id.* ¶¶ 19, 20.

The parties represent that, after this action was filed, Defendant tendered checks to the account holder, Plaintiff's Lebanese company, for the balance of its accounts with the Lebanese bank and closed those accounts [ECF #18-5]. Def. Mem. at 1; Pl. Opp. at 9.

## II.     DISCUSSION

The Court must dismiss this case without prejudice for lack of subject matter jurisdiction. The Court seriously doubts that any amendment can cure the problems with this case. However, as explained below, the Court grants Plaintiff's request for leave to amend.

A.   <u>The Parties Do Not Allege Diversity Jurisdiction.</u>

The pleadings do not establish that the Court has subject matter jurisdiction. Although neither of the parties has raised this issue, the Court has an "obligation" to "satisfy itself that [subject matter] jurisdiction exists." *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000). In its Notice of Removal, Defendant asserts that the Court has diversity jurisdiction, under 28 U.S.C. § 1332(a). Notice of Removal ¶ 7. Plaintiff did not file a motion to remand and has not otherwise challenged this assertion. However, the "fundamentally preliminary" question of the Court's subject matter jurisdiction cannot be waived by the parties. *Oneida Indian Nation v. Phillips*, 981 F.3d 157, 171 (2d Cir. 2020).

Diversity jurisdiction under section 1332 requires complete diversity of citizenship. *See Mills 2011 LLC v. Synovus Bank*, 921 F. Supp. 2d 219, 220 (S.D.N.Y. 2013); *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011). For purposes of diversity jurisdiction, citizenship is determined by domicile. *Pacho v. Enter. Rent-A-Car*, 510 F. Supp. 2d 331, 333 (S.D.N.Y. 2007); *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). A natural person "has but one domicile," where he resides and intends to remain. *Palazzo*, 232 F.3d at 42.

The parties seem to maintain that diversity exists because Plaintiff has an office in New York, while Defendant is a citizen of Lebanon. *See* Def. Mem. at 2; Pl. Mem. at 1. That is not enough. Neither the Complaint, nor the Notice of Removal alleges that Plaintiff is domiciled in New York. In its brief, Defendant asserts that Plaintiff is a "resident of the State of New York." Def. Mem. at 2 (citing Cmpl. ¶ 3). However, the Complaint and Notice of Removal allege only that Plaintiff is "the majority owner and principal of . . . [a] firm located at 350 Park Avenue" in New York. Cmpl. ¶ 3; *accord* Notice of Removal ¶ 8. An allegation about the location of one of Plaintiff's companies is obviously insufficient to allege that Plaintiff, personally, is domiciled in New York. *See Palazzo*, 232 F.3d at 42. Plaintiff never even asserts that he resides in New York, describing himself only as a "New York business person." Pl. Opp. at 1. He might just as easily describe himself as a Lebanese business person, since he also has a Lebanese company—indeed, that is the company involved in this case. *See* Cmpl. ¶ 3.

B.  Plaintiff Lacks Standing.

Even if the parties were to properly allege diversity, the Court would, nonetheless, lack subject matter jurisdiction because Plaintiff lacks standing. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016) (a dismissal "for lack of Article III standing . . . . is one for lack of subject matter jurisdiction"). Under Article III of the United States Constitution, the

jurisdiction of federal courts is limited to the resolution of "cases" and "controversies." U.S. Const. art. III, § 2.  "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (alteration in original) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  Plaintiff "bears the burden of establishing standing." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  To carry that burden, Plaintiff must allege an "injury-in-fact." *Id.*

Plaintiff lacks standing to assert claims based on alleged "violation[s] of *Milestones'* account holder agreements." Cmpl. ¶ 20 (emphasis added); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (describing the "general prohibition on a litigant's raising another person's legal rights").  The Complaint specifically alleges that Plaintiff opened the bank "accounts at SGBL in the name of Milestone Capital ME, S.A.L." Cmpl. ¶ 7.  The Account Opening Application confirms that the Lebanese company was the "owner[] of [the] Account(s)."  Account Opening Application at 5.  *See ATSI Communications*, 493 F.3d at 98 (a court may consider "documents incorporated into the complaint by reference").  To be sure, Plaintiff was "[a]uthorized" to request transactions on behalf of the company.  Account Opening Application at 4.  However, that does not mean Plaintiff was the owner of the account or a party to the account-holder agreements.

Neither party has furnished the account-holder agreements that Plaintiff seeks to enforce. However, Plaintiff specifically alleges that they were "Milestones' account holder agreements." Cmpl. ¶ 20.  Plaintiff also includes in the Complaint purely conclusory allegations that he is "the beneficial owner" of the bank accounts.  Cmpl. ¶¶ 1, 7.  The Court, however, is "not required to credit conclusory allegations or legal conclusions." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8,

12 (2d Cir. 2019). Plaintiff argues in his brief that the Court should infer that Plaintiff was the intended beneficiary of the account-holder agreements based on "SGBL's eight-year history of wiring funds from the Milestones' accounts directly to Plaintiff." Pl. Op. at 13. However, the Complaint does not allege that the bank wired payments to Plaintiff personally. Rather, Plaintiff alleges that the bank wired funds to a "specified account . . . in accordance with Plaintiff's request[s]." Cmpl. ¶¶ 8, 9; *cf. id.* ¶ 11. In any event, past wire transfers to Plaintiff would not be enough to infer that the company's contract with the bank was "intended" for Plaintiff's "immediate benefit." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 174, 944 N.E.2d 1104 (2011). Instead of providing the account-holder agreements or specific allegations, Plaintiff asks the Court to "speculate" that Plaintiff was either a party to the contracts or the intended beneficiary. *Id.* As such, Plaintiff has clearly failed to carry his burden to establish that he is a proper party to bring suit based on alleged violations of the account-holder agreements. *See W.R. Huff Asset Mgmt.*, 549 F.3d at 106.

Plaintiff also arguably fails to allege an injury from Defendant's refusal to wire the funds he requested. For purposes of Article III standing, "a litigant must seek relief for an injury that affects him in a 'personal and individual way.'" *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). Plaintiff alleges that he asked the bank to wire funds to a "First Niagara Account" and that he "informed SGBL that he needed the funds to immediately satisfy payment obligations in the United States, which . . . were accruing additional penalties and interest by the day." Cmpl. ¶¶ 10, 17, 18. Although the Complaint refers to the First Niagara account in passing as "Plaintiff's First Niagara Account," Plaintiff never specifically alleges that the First Niagara Account was a personal bank account, rather than another company account. *Id.* ¶ 11. The Complaint is

similarly opaque about whether the "payment obligations" were personal debts or debts owed by the companies.  *Id.* ¶ 18.  Thus, Plaintiff does not clearly allege that any injury from Defendant's refusal to wire the requested funds was "personal" to Plaintiff.  *Hollingsworth*, 570 U.S. 693, 705.  Because Plaintiff has failed to establish standing to assert his claims, the Court "lacks the power to adjudicate the merits of the case."  *Carter*, 822 F.3d at 54–55.

C. The Court Seriously Doubts that Amendment can Cure the Problems with this Case.

For the reasons discussed above, the Court dismisses this case for lack of subject matter jurisdiction.  Because the Court lacks authority to adjudicate the merits, "the dismissal must be without prejudice."  *Carter*, 822 F.3d at 54.  Accordingly, the Court grants Plaintiff's request for leave to amend the Complaint.  *See* Pl. Opp. at 20.

The Court, however, seriously doubts that any amendment can cure the deficiencies with this case.  As an initial matter, Plaintiff suggests "substitution" of the "real party in interest," his Lebanese company.  Pl. Opp. at 14–15 n.13.  However, adding a Lebanese plaintiff to an action against a Lebanese defendant would clearly destroy diversity jurisdiction.  *Universal Licensing Corp. v. Paola del Lungo S.P.A.*, 293 F.3d 579, 580–82 (2d Cir. 2002).  Moreover, Plaintiff asserts claims under New York Law.  There is an "established presumption . . . against the extraterritorial operation of New York law."  *Glob. Reinsurance Corp. U.S. Branch v. Equitas Ltd.*, 18 N.Y.3d 722, 735, 969 N.E.2d 187 (2012).  The Court does not see how that presumption can be overcome in a case about a contract between a Lebanese company and a Lebanese bank.  Finally, the Court notes that this case might be moot, in the light of the parties' representation that Defendant tendered checks for the balance of the bank accounts in issue, although Plaintiff asserts in his brief that these checks are "worthless."  Pl. Opp. 9 & n.9.

Plaintiff conceivably could amend his pleading to: (1) properly allege complete diversity; (2) properly allege that Plaintiff personally was the intended beneficiary of the account-holder agreements with Defendant and, perhaps, that he has "receive[d] authorization to sue from the registered Holder," *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. 3d 587, 607 (S.D.N.Y. 2015); and (3) properly allege an injury-in-fact, notwithstanding Defendant's tender of checks for the balance of the bank accounts in issue.  Even if Plaintiff does all of this, the Court might still conclude that Plaintiff fails to state a claim, or that principles of international comity require abstention.  However, the Court cannot now conclude, as a matter of law, that amendment is futile.

Accordingly, IT IS HEREBY ORDERED that Plaintiff shall file any amended complaint by April 22, 2021.  If the amended complaint fails to cure any of the problems raised in either this Opinion, or Defendant's motion papers [ECF #17, 18, 21], Plaintiff will not be given a further opportunity to amend.  The Court strongly suggests that Plaintiff attach to his amended complaint the account-holder agreements at issue.

### III. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is GRANTED.  Plaintiff's Complaint is dismissed without prejudice, and leave to amend is GRANTED.  Plaintiff shall file any amended complaint by April 22, 2021.

**SO ORDERED.**

Date:  **March 31, 2021**  
       **New York, NY**

_/s/ Mary Kay Vyskocil_  
**MARY KAY VYSKOCIL**  
**United States District Judge**